UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRENDON RIBBLE, et al.,

    Plaintiffs,

v.                                                                   Case No. 09-C-643

KIMBERLY-CLARK CORP., et al.,

    Defendants.

**ORDER**

Plaintiffs filed this action alleging age discrimination in connection with several reductions-in-force ("RIFs") undertaken by Defendant Kimberly-Clark between 2005 and 2009. Plaintiffs have now filed a motion to compel meaningful responses to an interrogatory they served on Kimberly-Clark. The interrogatory in question reads as follows:

> Identify by date each group layoff during the class period conducted by KC as part of the Global Business Plan that is not one of the seven phased layoffs described in the Complaint. For each layoff thus described, state:
>     a. whether an Exhibit B was given to terminated employees;
>     b. the number of employees terminated;
>     c. the total number of employees for which required information appears on the Exhibit B associated with the group layoff;
>     d. the description on Exhibit B of the decisional (or identified employee) units involved and the description (if any) in the severance agreement associated with the layoff that describes the decisional unit.

(Lewis Aff., Ex. A at 17.)

In short, the interrogatory sought information not about the RIFs at issue in this case, of which there are seven or eight (the parties have a dispute on that point), but about the more than 50 RIFs that occurred at Kimberly-Clark during the class period. Kimberly-Clark argues that the

information sought has no bearing on the claims in this case, and it has refused to provide the information sought, which precipitated the instant motion to compel.

The Older Workers Benefit Protection Act allows employers to obtain waivers from employees for discrimination claims, but employees must be provided with enough information about their decision such that their waivers can be deemed "knowing and voluntary." 29 U.S.C. § 626(f)(1)(A)-(H). As relevant here, the employees must be informed as to the size and scope of the group of employees considered for termination. The statute provides in part:

> (H) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer . . . informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to-
>
> (i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program . . . .

29 U.S.C. § 626(f)(1)(H)(i).

In other words, before executing a valid waiver as part of a severance agreement, the employee must be told the "class, unit, or group of individuals" to which the severance program applies, and he is to be told the ages and job titles of those who were selected for termination as well as those who were *not*. Moreover, the disclosure requirements span over time. Individuals terminated in subsequent programs must be informed about the ages and job titles previously terminated and retained within their class, unit or group. 29 C.F.R. § 1625(f)(4)(vi). At issue here is the scope of the class considered for termination, which the regulations call the "decisional unit." 29 C.F.R. § 1625.22(f)(1)(iii)(C). "A 'decisional unit' is that portion of the employer's organizational structure from which the employer chose the persons who would be offered consideration for the signing of a waiver and those who would not be offered consideration for the

2

signing of a waiver." *Id.* § 1625.22(f)(3)(i)(B). The purpose of using decisional units to evaluate RIFs is that some practical, organizational framework is needed to group similarly situated employees into a logical pool of employees from which the employer made its RIF decision. The regulations explain that "if an employer seeks to terminate employees by exclusively considering a particular portion or subgroup of its operations at a specific facility, then that subgroup or portion of the workforce at that facility will be considered the decisional unit." 29 C.F.R. § 1625.22(f)(3)(ii)(D). And, "if the employer analyzes its operations at several facilities then by the nature of that employer's decision-making process . . . the decisional unit would include all considered facilities." 29 C.F.R. § 1625.22(f)(3)(ii)(E).

Here, there are either seven or eight RIFs at issue, and Kimberly-Clark argues that information about these RIFs (which it has provided) is all that's relevant to the Plaintiffs' claims. Kimberly-Clark is a large global corporation with thousands of employees, and none of the other RIFs during this period have any bearing on the RIFs that affect the Plaintiffs because the Plaintiffs were all part of different decisional units. Information sought by Plaintiffs about the fifty-some other decisional units is simply not relevant here.

Plaintiffs protest that we should not have to take Kimberly-Clark's own description of its decisional units at face value. The reason Plaintiffs want information about the *other* RIFs is to evaluate those decisional units, which could shed light on whether Kimberly-Clark's self-described decisional units for the RIFs at issue here are accurate categorizations reflective of how the company actually made its decisions. If Kimberly-Clark failed to properly disclose the actual decisional units it used in making its determinations, that would invalidate the employees' waivers. The only way that the Plaintiffs can evaluate what the proper decisional units *actually* were is to look at *all* the

3

RIFs that occurred during the relevant period. For example, in a 2006 RIF Kimberly-Clark disclosed to the affected employees that they were part of an "Essential Services" decisional unit. (Lewis Aff., Ex. C at 4.) The exhibit to the severance agreement and release lists all the job titles within the unit and the ages of those who were terminated and those who weren't. (*Id.* at 11-12.) But the ultimate determination of what constitutes a decisional unit is made by a court, not the employer. *See, e.g., Pagliolo v. Guidant Corp.,* 2007 WL 1567617, *2-3 (D. Minn. 2007) ("Defendants violated the OWBPA by failing to properly disclose the decisional unit for the Reduction in Force ("RIF") and because Defendants' claimed decisional unit was not legitimate under the statute or corresponding regulations."); *Burlison v. McDonald's Corp.*, 455 F.3d 1242, 1248 (11th Cir. 2006). As such, information about other decisional units for RIFs occurring around the same time could assist the Plaintiffs (and the Court) in evaluating whether the "Essential Services" group was a legitimate decisional unit or whether (as discussed below) Kimberly-Clark may have improperly described the units to its terminated employees.

The reason we cannot always take the employer's description of decisional units at face value is that in some cases the employer's definition of the decisional unit can be self-serving. *Raczak v. Ameritech Corp.,* 103 F.3d 1257, 1263 (6th Cir. 1997) ("it is certainly possible that an employer will want to fiddle with the definition to mask the possible evidence for age discrimination.") For example, suppose a company decides to eliminate a large number of older employees. If it wants to obtain waivers from them, it knows that under the OWBPA it will have to provide a list of fired and retained employees within the decisional unit to the terminated employees showing the ages of such individuals. If terminated employees see a list showing that a number of older workers had been *retained*, the employees will be inclined to conclude that no discrimination has occurred and will sign the waivers. Thus, a company might be tempted to

4

broaden its *stated* decisional unit beyond its legitimate scope to include a number of token older (retained) workers who were not actually a part of the decision-making process.[1] And the company might further be tempted to include the same older employees in retention lists under one or more *other* RIFs. A company's inclusion of token older employees in retention lists, as well as overlap between stated decisional units, could mislead terminated employees into thinking that several older workers in the relevant unit had been retained when in fact these employees were *not* part of their *actual* decisional unit but were merely straw men included in the unit to make it *look* like the company had retained several older workers. In such a case, Plaintiffs might have an argument that the employer was gerrymandering its decisional units to mask discrimination and an argument that the company failed to disclose the actual decisional unit to the employees, which would invalidate the employee's waiver.

Plaintiffs do not allege this – they have formed no opinion about the propriety of Kimberly-Clark's decisional units at this stage – but they argue that they need to know about the other RIFs and decisional units to see if Kimberly-Clark's RIF process makes sense and to ensure that what the company told its terminated employees was actually valid.[2] They note that given the large number of company RIFs during this period, it is clear that Kimberly-Clark was engaged in a systematic downsizing program and that information about the terminated (and retained) employees in other decisional units could shed light on whether its own description of the decisional units the Plaintiffs belonged to was accurate. They concede it is likely that many or most of the other RIFs will be completely unrelated because they occurred in other countries or in other divisions of the company.

---

[1] Similarly, a company could use artificially small decisional units to mask discrimination.

[2] They are clear to avoid arguing that the company's entire "Global Business Plan" is not a single RIF.

5

But that is a question for another day. For now, they merely want access to the data about who was fired and who was retained so that they (and this Court) can determine whether the employees were included in other RIF units (i.e., double-counted) or whether, for example, other decisional units were "blended" with the units used in the Plaintiffs' RIFs. I conclude based on the above that the interrogatory is calculated to lead to relevant evidence, and it should therefore be answered.[3]

*Burlison v. McDonald's Corp.*, cited by Kimberly-Clark, is not to the contrary. There, a district court had concluded that McDonald's, in conducting a RIF, should have informed employees terminated in a RIF about all other employees who were terminated nationwide, as opposed to merely those within the relevant decisional unit. 455 F.3d 1242, 1245 (11th Cir. 2006). The court of appeals reversed and concluded that including such information would be irrelevant and possibly confusing to terminated employees considering whether to sign the waiver. *Id.* at 1247. "Information about who was terminated out of a *national* universe is not comparable to data about who was not selected for firing from a *local* unrepresentative subset. It is, in short, comparing apples to oranges." *Id.* Although that holding means a company need not provide such global information in its list to terminated employees, that does not mean the information is irrelevant in the discovery process in determining the more basic question of what properly constitutes the decisional unit in the first place. Here, Plaintiffs are not suggesting Kimberly-Clark should have related information about employees outside of the relevant decisional units; they are simply asking

---

[3] Kimberly-Clark suggests that Plaintiffs' desire for the information is flawed because it is based on employees' observations (based on what *has* been disclosed) that individuals they worked side-by-side with were subject to *different* decisional units during different RIFs. It is true that the fact that they may have worked side-by-side does not mean they are part of the same unit. But again, Plaintiffs are merely asking for discovery on these points. It may be true that different decisional units were appropriate, but Kimberly-Clark has pointed to no case law suggesting that mere discovery to investigate the units is inappropriate.

6

what the actual decisional units were and whether Kimberly-Clark properly disclosed them. Reliance on *Burlison* and the other cases cited by Kimberly-Clark would beg those questions rather than answer them.[4]

I am aware of course that discovery can be burdensome to the producing party (although Kimberly-Clark's objections on this score are muted) and that broad discovery can give plaintiffs tremendous leverage over defendants in a case like this. Plaintiffs have conceded that much of the information they seek will not end up being relevant (for example, because it will be obvious that the other decisional units had nothing to do with their own terminations), and they are cautioned that the allowance of broad discovery is not a fishing license. What's important now is to assess the legitimacy of the Defendant's stated decisional units, and unless the information produced is truly suggestive, there does not seem to be a great need for further follow-up discovery along the lines of what Plaintiffs sought with respect to the RIFs that are actually at issue in this case. If discovery gets out of hand, or if there is any suggestion of abuse, Kimberly-Clark may of course move for protection from this Court.

For the reasons given above, the motion to compel is **GRANTED**.

**SO ORDERED** this ___15th___ day of June, 2010.

                                               s/ William C. Griesbach
                                               William C. Griesbach
                                               United States District Judge

---

[4] For example, Kimberly-Clark suggests that in *Pagliolo v. Guidant Corp.*, 483 F. Supp. 2d 847, 859 (D. Minn. 2007), Plaintiffs' counsel took the opposite position it takes here. But counsel here are clear to explain that they are not even taking a position yet as to the proper scope of Kimberly-Clark's decisional units. This is merely a discovery question as to whether the other RIF information could lead to relevant information.