UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

USDC EDWI
FILED IN GREEN BAY DIV

MAR 1 2013

AT_____ O'CLOCK_____M
JON W. SANFILIPPO

RANDY BURR, et al.,

           Plaintiffs,

v.

           Case No. 09-C-643

KIMBERLY-CLARK
CORPORATION, et al.

           Defendants.

# SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF SCHMIDT'S (*pro se*) MOTION TO COMPEL SURRENDER OF THE COMPLETE CASE FILE AND OTHER RELATED MATTERS

# TABLE OF CONTENTS

1. Introduction/Background

2. The Case File is the Property of Plaintiff Schmidt

    A. Filed Court Motions (Docs 198, 211)

    B. Withdrawn Counsel Letter (Doc 217)

    C. Private and Confidential Records/Phase 1 Records Are Relevant

    D. Protective Order/Sealed Records

3. Plaintiff Schmidt/Public Interest Publications

4. Respectfully Request Court Motion Modifications

5. Conclusions

6. Proposed Staged Path Forward

7. Appendix

   - Union Oil v. Leavell, 220 F.3d 562 (US Court of Appeals, 7th Circuit 2000)

   - Plaintiff Schmidt Journal Publication (Technovation, 29 (2009), pp. 181-191)

   - Plaintiff Schmidt Letter-to-the-Editor (Post Crescent, January 2008)

   - Plaintiff Schmidt Follow-up Letter-to-the-Editor (Post Crescent, September 2012)

## 1. Introduction/Background

In February 2008 the Defendant Kimberly-Clark, my employer for about 14 years, terminated my employment as part of their 3-year, 2005 Global Business Plan. I declined to execute their severance agreement that among many other terms, would waive my right of age discrimination claims. Shortly thereafter, as required by law, I filed an Age Discrimination charge against the Defendant with the EEOC (#443-2008-02308).

In June 2009, I executed a contingency-based retainer with now withdrawn plaintiff attorneys to represent me on age discrimination claims against Kimberly-Clark. We filed our formal, 29-page Complaint plus attachments with this Court in July 2009 (Doc 1). In February 2012, this Court ruled that the executed lawsuit waivers of 50 of the 57 plaintiffs were valid (Doc 183).

Plaintiff Counsel repeatedly communicated that they would, as promised, proceed to trial with the "winning" group of 7 plaintiffs including me and appeal this Court's ruling of the "losing" 50 plaintiffs. They began negotiating settlement terms for all 57 plaintiffs with Defendant Counsel in early 2012. Plaintiff Counsel *first* informed the 57 plaintiffs of their settlement negotiations *and* agreements in June 2012. In August 2012 during our settlement mediation process, Plaintiff Counsel surprise filed a motion to withdraw their representation of me citing SCR 20:1.16 (Doc 198). I formally objected, and respectfully requested that the Court enforce all the obligations of counsel and other related matters (Doc 201).

The case file is clearly the property of Plaintiff Schmidt who needs it to help retain new counsel, inform discovery, plan strategy/tactics, and prove his claims. Plaintiff Schmidt (now *pro se*)

- 3 -

filed a motion to compel the surrender of the complete case file (Doc 211). The motion also respectfully requested the rescinding of the February 2010 Protective Order (Docs 22, 23) that created 50,000+ pages of sealed case records. As required by law, "good cause" was never proven for protecting or sealing these records. These Withdrawn Counsel and Court records are highly likely, almost entirely, from the period of early 2005 thru 2008, i.e., already between more than 4 and 8 years old. Kimberly-Clark Corporation is a publicly-owned company required to provide <u>timely</u> public transparency including court proceedings.

Withdrawn Counsel did not object to my motion. The Defendant did object. During a Hearing in Green Bay (Doc 216), this Court directed further briefing from Withdrawn Counsel, Defendant Counsel and now *pro se* Plaintiff Schmidt.

## 2. The Case File is the Property of Plaintiff Schmidt

A. Filed Court Motions (Docs 198, 211)

- SCR 20:1.16 (d) states: "Upon termination of representation, a lawyer shall take steps … surrendering papers and property to which the client is entitled". The Ethics Counsel for the State Bar of Wisconsin concludes that counsel is "obligated to take reasonable steps to mitigate whatever harm may result from the withdrawal" and specifically: "In Wisconsin, the file is the property of the client" (Doc 215). After repeated requests by me, Withdrawn Counsel has only surrendered those numerous records that I provided to them with only a handful of heavily redacted or excerpts of case records. Withdrawn Counsel has refused to surrender numerous case records including their work on my behalf since 2008.

- Withdrawn Counsel did not oppose the motion. Hence, the Court has the authority to grant the motion as per Local Rule 7 (d):

    "Failure to file a memorandum in opposition to a motion is sufficient cause for the Court to grant the motion. The Court also may impose sanctions under General L. R. 83(f)."

- Withdrawn counsel does not dispute that plaintiff "Schmidt is entitled to his litigation file" (Doc 217).

B. Withdrawn Counsel Letter (Doc 217)

- In their letter to this Court (Doc 217), Withdrawn Counsel quoted two full paragraphs from a 1996 New York Appellate Court case, based on that Court's Local Rules, as their core authority as to why they refuse to surrender the complete case file to their former client. Importantly, Withdrawn Counsel has not surrendered anything remotely near what the former counsel in their cited case surrendered to their former

- 5 -

client. As quoted, the Court ruling stated the following examples of what former counsel had already surrendered to their former client:

> "all pleadings, motions, court orders and other documents filed and exchanged in court" ... "correspondence exchanged" between plaintiff and defendant, the retainer agreement, the closing statement, the disbursement file, investigatory material, and statements given and received of plaintiff and defendant relative to her representation in the underlying action."

Further, the NY Appellate Court also stated that Federal practice expressly permits categorical demands for file records (Federal Rules for Civil Procedures, Rule 34[b]).

Withdrawn Counsel then cites case: First Wisconsin Mortgage Trust v. First Wisconsin Corp., 86 F.R.D. 160, 167 (E.D. Wis. 1980), claiming that a client does not have a right to all of his attorney's work product. This is contrary to the more relevant case that subsequently reviewed and applied their cited case: Wagner v. Lehman Brothers, 683 F. Supp. 189, US District Court Illinois 1987. The Court ruled:

> "the plaintiff and her successor counsel may have access to all of the material generated during the course of this case, including all of the material filed under seal and all of the work product of disqualified counsel."

C. Private and Confidential Records/Phase 1 Records Are Relevant

- Both Withdrawn Counsel and Defendant Counsel repeatedly claim that I am not entitled to the complete case file because it contains private and confidential information not easily separated, and it mostly contains Phase 1 records not related to me. These claims are misleading at best for several reasons. As examples: 1) it is not believable that the sophisticated opposition parties with deep resources have not already reviewed and organized the case records in multiple forms for various

- 6 -

Case 1:09-cv-00643-WCG   Filed 03/01/13   Page 6 of 15   Document 221

purposes, 2) they chose to directly involve me in Phase 1, 3) Phase 1 records do apply to my case, and 4) most of the records are already old and stale. Also particularly important: 5) for various reasons, it is highly unlikely that the vast bulk of the case records are *truly* private and confidential.

Case records are highly likely already organized and categorized for effective and efficient communication, research and access. Withdrawn Counsel is based in Florida, Michigan, Minnesota and Pennsylvania, while the Defendant and its various external counsel offices are based primarily in Wisconsin, Texas, Illinois and Georgia with numerous offices globally. Both have large numbers of professional individuals and groups, both internally and externally, involved in this and similar cases. Many of these professionals entered and left this case, even left and re-entered, since its inception. Withdrawn Counsel first became involved in 2008 and the first filing against the Defendant occurred in 2006, over 6 years ago (Doc 1).

The large number of involved, geographically dispersed individuals and groups in this case, coupled with the massive volume of file records and need for timely communications, strongly suggests that there exists, without doubt, numerous systems for the organization, categorization and retrieval of the case records. These systems need to be disclosed in detail, and leveraged to effectively and efficiently help resolve the issue of what records are *truly* relevant, private and/or confidential.

If "good cause" is proven, truly private and confidential records can be redacted,

protected and/or sealed. It is highly unlikely that there are proportionally many truly private and confidential records among the voluminous collection of records that can be justifiably hidden from public disclosure and any plaintiffs. Also, a large number of records have already been identified, reviewed and redacted.

The opposing parties chose to include me in Phase 1. As examples, the Defendant chose to compel me to submit to discovery, interrogatories, admissions, and a 6-hour deposition, all of which are under Court Seal. As examples of non-waiver related records, during my deposition Defendant Counsel questioned me about my published (appended) and potential publications, resumes, job history, colleagues/friends, interviews, job search contacts at other companies, other counsel contacts, and my discovery document search process.

Withdrawn Counsel has proposed the "compromise" that <u>only</u> the unredacted court pleadings be released to Plaintiff Schmidt. It is claimed that they represent the best judgment of counsel of what is relevant, and eliminates the cumbersome process of reviewing the entire case file. It is likely that records useful to my case were not considered by counsel for Phase 1 pleadings because counsel was only focused on the waivers. Hence, relevant records were either not identified as immediately pertinent, or withheld for post-Phase 1 consideration, i.e., not included in the pleadings. This includes, for example, records relating to the 3-year Global Business Plan (GBP) under which the RIFs were conducted.

The Complaint (Doc 1) filed in July 2009 clearly claims that the willful and unlawful termination of me based on age was a product of the 3-year GBP stating:

> "each plaintiff was laid off as part of Kimberly-Clark's Global Business Plan reductions".

Mr. Gerald Tonies, a long-time finance executive with no innovation management training or experience, was abruptly assigned the <u>additional</u> responsibility of Vice President Innovations in 2007. A core accountability for Mr. Tonies since 2005 was to identify, collect and report metrics relating to the GBP. This role continued thru its completion in 2008. He then transferred to Human Resources, and retired shortly thereafter. The deposition of Mr. Tonies is under Court Seal. The GBP had key guiding principles for RIFs including age related metrics such as salary and pension obligations. Hence, all records related to the Global Business Plan are important and part of my case file property, and need to be surrendered to me. For example, 100% of the *valid* "Innovations CIO" RIF group members that included me were over the protected age of 40. This fact is favorably consistent with the financial objectives of the GBP. The heavily redacted, Court Sealed, "Defendants Memorandum of Law" (Doc 79) gives further supporting evidence, revealing the following four related facts:

> "The GBP establishes various financial objectives, such as revenue and profit growth, return on invested capital and similar metrics", "the business unit ... was required to submit a written document ... explaining how the project was consistent with GBP strategies", "the decision makers were Tonies and the three Innovation CIO team leaders, Achter, Clusman and Hill (with input by Donaldson and Schweitzer)", and "thus, Exhibit B clearly set forth the impact of this RIF on older workers".

All of these "Innovation CIO" RIF decision makers exited Defendant Kimberly-Clark years ago. Hence, their case records are of particular importance to my case.

- 9 -

Case 1:09-cv-00643-WCG   Filed 03/01/13   Page 9 of 15   Document 221

D. Protective Order/Sealed Records

- Paragraph 19 of the "Stipulation for Protective Order" (Doc 22) signed by the Court in February 2010 (Doc 23), provides the authority to rescind the Protective Order (PO):

    > "19. Nothing in this Stipulation for Protective Order shall prevent any party from seeking a modification of the Order entered on this Stipulation for Protective Order or objecting to discovery that it believes otherwise improper."

- The law clearly requires proof of "good cause" for case records to be protected or sealed. "Good cause" has <u>not</u> been proven in the public record for any of the current 50,000+ pages of records under seal or protected, hence the Protective Order should be rescinded. Local Rules (General L.R. 79 (d) (4), Civil L.R. 26 (e) (1)) and the applicable "Committee Comment" (p. 31) state, respectively:

    > "Any motion to seal must be accompanied by proof of good cause for withholding the material from the public record", "Upon a showing of good cause, the Court may enter a protective order regarding confidentiality of all documents produced in the course of discovery", and "The designation of a paper as confidential under the terms of a protective order is not sufficient to establish the basis for filing that document under seal."

    The Protective Order Stipulation itself (Doc 22), filed by both Withdrawn and Defendant Counsels, cite both Federal Rules of Civil Procedure and Local Rules emphasizing the requirement of showing "good cause" which they have <u>not</u> satisfied.

- Union Oil v Leavell (appended) is an example of the clear case precedent and judicial philosophy of the critically important Public Interest requirement that Court records and proceedings be as *timely* transparent and accessible to the Public as possible:

    > "the tradition that litigation is open to the public is of very long standing. ... People who want secrecy should opt for arbitration. When they call on the courts, they must accept the openness that goes with subsidized dispute resolution by

- 10 -

public (and publicly accountable) officials. Judicial proceedings are public rather than private property ... and the third-party effects that justify the subsidy of the judicial system also justify making records and decisions as open as possible. What happens in the halls of government is presumptively public business."

### 3. Plaintiff Schmidt/Public Interest Publications

- At our January 18th Green Bay Hearing, Defendant Counsel expressed their "ongoing concern" and "not sure what he has in mind" about potential future publications containing information in the 50,000+ pages of sealed case record (Tape 011813, Time 9:25:15 am). It is likely that the bulk of this information is already permissible in the public domain or soon will be. Such publications are clearly in the Public Interest, and inhibiting such publications runs significantly counter to the timely transparency requirements of publicly owned companies, as well as court records and proceedings.

Defendant counsel's "concern" is mostly, by far, unfounded and counter to transparency law and regulations. Of course, <u>limited</u> private and confidential information of individuals can and should be redacted, and importantly, likely have already been identified, reviewed and redacted by Withdrawn Counsel and Defendant Kimberly-Clark. Appended for the Court's record, review and consideration are two publications by Plaintiff Schmidt that the Defendant chose to "discover" in a 6-hour deposition during Phase 1 Discovery. This deposition is currently under Court Seal. They are a scholarly business publication and a Letter-to-the-Editor. Also appended is a follow up Letter-to-the-Editor written and submitted by me, but rejected for publication in 2012. These and similar publications are clearly permissible and in the Public Interest.

In addition, as an example of related potential publications independent of this case, it is my intention to write and submit multiple follow-up analyses to the book "Good To Great" by Jim Collins. The current Kimberly-Clark CEO, Mr. Thomas J. Falk, personally handed this book to me after one of our Global Leadership Meetings in 2001. Author Collins argues that under the leadership of both CEOs Darwin Smith and Wayne Sanders, Kimberly-Clark evolved from a "Good" company to a "Great" company. It is reasonable and in the Public Interest to assess to where Kimberly-Clark has evolved hence, after a decade of leadership by CEO Thomas J. Falk, as well as many others.

Law/Regulations require publicly owned companies to provide <u>timely</u>, public transparency of their behaviors and metrics. It is clearly in the Public Interest to provide <u>timely</u> transparency of this already stale and aging case file, particularly while the relevant leadership is leading rather than after they have exited. For example, Mr. Robert E. Abernathy (President, North America Consumer Products) has announced his retirement at age 58 from the Defendant at the end of 2013 after 30 years of service.

### 4. Respectfully Request Court Motion Modifications

As in our subject motion, I respectfully request that the Court also Order useful motion modifications as permitted under Local Rules (Civil L.R.7 (g)):

> "The Court may provide by order or other notice to the parties that different or additional provisions regarding motion practice apply."

This much-needed assistance would help recognize and justly mitigate, the significant challenges of a now *pro se* plaintiff in an almost 4-year old case involving scores of opposition attorneys

with deep resources, several years old evidence, and who is unexpectedly without counsel.

## 5. Conclusions

The complete case file, with the exception of *limited* redacted private and confidential records, is the property of Plaintiff Schmidt. The large volume of records categorized as confidential, protected and/or sealed are improper. They are improper because required "good cause" has never been proven, and the required *timely* public transparency of publicly-owned companies and court proceedings. Hence, Plaintiff Schmidt (*pro se*) respectfully requests that the Court grant his motion to compel Withdrawn Counsel to surrender the complete case file to me in conjunction with the Court rescinding the related Protective Order.

## 6. Proposed Staged Path Forward

Stage 1:

- Consistent with the precedent case rulings cited above, Withdrawn Counsel immediately surrenders their complete case file, redacting *only* truly private and confidential information, including "all of the material generated" such as "correspondence exchanged between plaintiff and defendant", "investigatory material", and their geographically-dispersed "communications" and "work product".

- Consistent in part with the proposal by Withdrawn Counsel, immediately surrender all of the unredacted court pleadings and attachments.

- The Court provides all parties the opportunity to prove "good cause" within a 30-day time period for any case records that may justifiably require confidential, private or sealed categorization under a Protective Order.

- Withdrawn and Defendant Counsel disclose all case record file system details including listings, indexes, categorizations, sources, table of contents, directories, etc., for transparent objective review of available relevant records. Plaintiff Schmidt to review disclosed record systems to help identify relevant records.

Stage 2:

- After 30-days, all case records without proven "good cause" for categorization under a Protective Order are surrendered to Plaintiff Schmidt.
- Plaintiff Schmidt works in good faith to resolve any case record disputes with respective counsel.

Stage 3:

- Court considers and decides any remaining case record disputes.
- Plaintiff Schmidt proceeds with his claims including reviewing surrendered case records, actively seeking new counsel, planning strategy/tactics, as well as age discrimination and related discovery.

Dated: _____March 1st, 2013_____  By: _____*Rich Schmidt*_____

Richard Stephen Schmidt (*pro se*)
1138 E. Overland Road
Appleton, Wisconsin 54911
(920) 735-9152
RSchmidtIIS@Gmail.com
RichPundit@aol.com

***PLAINTIFF***

- 14 -

- 15 -