UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RICHARD S. SCHMIDT, et al.,

        Plaintiffs,

   v.                                          Case No. 09-C-0643

KIMBERLY-CLARK CORPORATION, et al.,

        Defendants.

**DECISION AND ORDER GRANTING IN PART AND DENYING PART PLAINTIFF RICHARD SCHMIDT'S MOTION TO COMPEL PRODUCTION OF LITIGATION FILE AND TO VACATE PROTECTIVE ORDER**

On July 1, 2009, Plaintiff Richard S. Schmidt and 56 other individuals filed this age discrimination action. Plaintiffs were former Kimberly-Clark Corporation employees who were fired or forced to resign over a three-year period as part of a series of reductions in force. Schmidt executed a retainer agreement with the attorneys representing the other 56 plaintiffs on June 24, 2009 and an amended retainer agreement on May 20, 2012. On August 20, 2012, plaintiffs' attorneys filed a motion to withdraw as counsel for Schmidt. The motion was granted, and Schmidt has proceeded *pro se* since then. The other 56 plaintiffs' claims have since been dismissed, and only Schmidt's claims remain. Schmidt has filed a motion to compel his former attorneys to provide him a "complete copy" of the litigation file related to this matter. He also seeks rescission of the court's February 17, 2010 protective order. The court held a hearing on the motion on January 18, 2013, and ordered additional briefing. The matter is now ripe for decision. For the reasons that follow, Schmidt's motion will be granted in part and denied in part.

By way of brief background, early in the proceedings, the parties stipulated that discovery would be conducted in phases. At issue during Phase I was the validity of a release and waiver signed by all plaintiffs except Schmidt at the time of their termination. Discovery related to individual termination decisions was to commence during Phase II. Because Schmidt did not sign a release and waiver, the discovery process in Phase I was not directed to his claims. Schmidt's former attorneys state that during Phase I, they amassed more than 50,000 pages of documents from defendants, and similarly compiled thousands of pages of documents on their own. A large amount of these documents apparently involve confidential financial and health-related information concerning each of the plaintiffs.

Schmidt's former attorneys and K-C have argued that Schmidt's motion should be denied because the voluminous discovery generated during Phase I only dealt with the issue of whether the release and waiver agreements were valid and enforceable. As such, they argue much of what Schmidt seeks from the case file does not relate to his claims. Rather, they contend Schmidt will be able to serve his own discovery requests and develop a case file related to his claims as the case proceeds. K-C also assert that rescinding the protective order would be unnecessary and prejudicial because thousands of business records were disclosed in reliance on the order, some of which were marked "confidential," some that were marked as containing "private personnel information," and some that were for "attorneys' eyes only."

To date, Schmidt's former attorneys have produced to him all of the documents Schmidt organized and forwarded to counsel related to the case, redacted versions of all the briefs filed in this litigation, and the damage analysis prepared for Schmidt by plaintiffs' retained expert. The question presented is whether there are additional materials in his former attorneys' files that should

be turned over to him. Schmidt seeks copies of his attorneys' entire case file. His former attorneys contend that "[b]oth plaintiffs and K-C produced, at various times, a large amount of documents that involve confidential financial and health-related documents." (Dkt. # 217 at 2.) They argue that an order requiring that they turn over the entire file would require them to sort through tens of thousands of pages of documents to make sure that what they handed over did not contain personal and private information obtained from one of their other fifty-six clients or material received from K-C and designated "confidential" or "attorney's eyes only" pursuant to the protective order. The time and cost of such a review, the attorneys contend, would be prohibitive and disproportionate to the minuscule potential benefit such material would have for Schmidt's case. Instead, the former attorneys suggest that Schmidt could be provided access to the entire sealed record in the case, which would include all attachments accompanying the briefs filed with the court, subject to Schmidt's agreeing to be bound by the protective order stipulated to by the parties. K-C, on the other hand, contends that Schmidt's motion should simply be denied because he has already received from his attorneys everything he is entitled to receive. Ultimately, the issue is not whether Schmidt has the right to receive his attorneys' litigation file, but rather what the "litigation file" includes.

Courts differ on what documents relating to the representation an attorney must provide his client for inspection or copying upon termination of the representation. The cases distinguish between the "entire file" or the "end products." *See Loeffler v. Lanser (In re ANR Advance Transp. Co., Inc.)*, 302 B.R. 607, 614 (E.D. Wis. 2003); *S.E.C. v. McNaul*, 277 F.R.D. 439, 444 (D. Kan. 2011); *Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn L.L.P.*, 91 N.Y.2d 30, 34, 666 N.Y.S. 2d 985, 689 N.E.2d 879 (1997). A minority of courts employ the "end product" approach,

3

which provides that a client is entitled to filed pleadings; final versions of documents prepared for the client's use; and attorney correspondence with the client, opposing counsel, and witnesses. *In re ANR Advance*, 302 B.R. at 614. Under the minority rule, absent a demonstrated need, the client is not entitled to preliminary documents used by the lawyer to reach the end product, such as internal legal memoranda, preliminary drafts of pleadings, or other preliminary documents. *Id.* It is unclear from the cases cited whether the minority rule includes discovery materials, such as depositions, answers to interrogatories, or documents produced by the defendants in response to requests or subpoenas issued by counsel. In any event, Wisconsin courts follow this minority rule. *Id.* at 614, n.1 (citing Wis. Ethics Op. E-82-7 (1998)). This case arises under federal law, however, and thus federal law would control.

Under the majority rule, upon termination of the attorney-client relationship, the client is presumed to be entitled to full access to the attorney's file on a matter where the attorney represented the client. *Id.* This rule has also been adopted by the Restatement (Third) of Law Governing Lawyers § 46(2) (2000). But the rule is subject to limitations. Attorneys may withhold some non-end product documents including private notes and internal memoranda discussing matters such as assignment of lawyers, whether the lawyer must withdraw, or possible malpractice liability. *See* Restatement (Third) of Law Governing Lawyers § 46 cmt. c. In addition, "[a] lawyer may deny a client's request to retrieve, inspect, or copy documents when compliance would violate the lawyer's duty to another. . . . Justification would also exist if the document contained confidences of another client that the lawyer was required to protect." *Id.* Given these limitations, the differences between the majority and minority rules may not be substantial. *In re ANR Advance,* 302 B.R. at 614.

4

Although the Seventh Circuit does not appear to have addressed the issue, I conclude that the rule stated in the Restatement with the exceptions noted is the better rule. Under that rule, Schmidt is entitled to the full benefit of his attorneys' efforts on his behalf over the past several years. This rule makes sense in that it provides the client, not only the end products, but also the discovery his attorneys have developed, as well as any pertinent factual or legal analysis. If Schmidt had retained his former attorneys on an hourly basis, there would be little question that he would have the right to the discovery and analysis he directly paid them to undertake. A contractor hired to build a house does not take back the materials and labor he contributed to the project after he has been paid for them if, because of a dispute with the owner, he does not complete the project. No reason has been offered why the result should be different where, as here, the fee is contingent and, instead of payment for time expended, the attorney agrees to accept as payment a percentage of the recovery or a claim for fees from the defendant. The majority rule also makes sense because it avoids the waste of resources that would result from requiring Schmidt or his future attorney to expend time and effort accumulating the same evidence and analysis. This is especially the case to the extent that the minority rule would not require attorneys to turn over to a client from whose ongoing case they have withdrawn copies of depositions. Not only would it be unreasonable to require the client to incur the expense of re-deposing a witness, but given the passage of time and the fading of memories, the same evidence may not even be available.

While it is true that Schmidt's claim was stayed during Phase I of the litigation, at least some of the discovery conducted by the parties during Phase I is relevant to his claim. Plaintiffs' overall theory of the case was that each of them, including Schmidt, was terminated on account of his or her age as part of K-C's Global Business Plan to reduce its workforce. Phase I of the litigation was

5

directed to the issue of whether the releases that all of the plaintiffs except Schmidt had signed as part of a severance agreement were valid. Plaintiffs claimed that the waivers were invalid because K-C had failed to provide the full disclosure required by The Older Workers' Benefit Protection Act (OWBPA), 29 U.S.C. § 626(f)(1). Phase I discovery focused on the statistical information that had not been conveyed to those employees whose jobs were terminated but which plaintiffs' attorneys believed was necessary in order for their clients to intelligently assess the strength of potential age discrimination claims before they signed releases. It is difficult to see how at least some of this evidence might not be relevant to Schmidt's claim even though he refused to sign a release.

This does not mean he is entitled to the entire file, however. He is not entitled to confidential financial or health-related information the other fifty-six plaintiffs provided their attorneys. Nor is he entitled to copies of documents his attorneys received on condition that they would not disclose it to others. This would include documents designated "confidential" or "confidential - attorneys' eyes only" that his attorneys received from K-C pursuant to the protective order. In that regard, to the extent Schmidt seeks to have the protective order rescinded, his motion will be denied. Schmidt offers no reason that would justify rescinding an agreement which the attorneys entered into in good faith in order to expedite discovery and upon which they relied throughout the case. Assuming he agrees to be bound by the protective order, he may have access to those materials designated "confidential," and once he obtains counsel, his attorney, upon signing the protective order, may have access to those marked "confidential - attorneys' eyes only."

I have considered the argument that the cost of the document review needed to determine what must be retained or redacted is far in excess of whatever value the material will have to Schmidt's case. That will be for Schmidt to decide. Counsel should not be required to bear that

6

expense. The Restatement makes clear that payment of expenses for delivering documents is the responsibility of the client. Restatement (Third) of Law Governing Lawyers § 46 cmt. e. Where, as here, there may be significant costs in reviewing and assembling the entire portion of the entire file that Schmidt may receive, and the relevance of the entire file to his claim is somewhat attenuated, placing the burden on the requester seems reasonable. If Schmidt agrees to be bound by the protective order, however, providing what he has requested may not be as burdensome as counsel initially estimated. It is not clear from the record what personal information the other plaintiffs would have disclosed to their attorneys in a case of this kind. Further consultation between Schmidt and counsel may be needed to establish precisely what is involved.

Schmidt does have other options, of course. Rather than becoming bogged down in what would inevitably involve further disputes over which of the 50,000 plus documents are protected because they contain protected confidential information of the other 56 plaintiffs or were designated confidential under the protective order, Schmidt could agree at least as an initial matter to settle for access to what has been filed with the court. These materials will provide Schmidt with the necessary information and tools to proceed with obtaining counsel and to apprise him of the issues and other evidence that might exist.

An additional wrinkle in the case, however, is the fact that many of the parties' filings have been maintained under seal. This was done pursuant to the protective order agreed to by the parties and signed by the court. Like most protective orders, this one allowed the parties to designate documents produced in the course of discovery "confidential" or "attorneys eyes only," so as to expedite the discovery process without emerging the court and counsel in repeated disputes over what must be produced. The order provided that court filings, such as briefs, affidavits, and

7

exhibits, that included information from documents designated "confidential" were to be filed under seal. Of course, as the court pointed out at the hearing on Schmidt's request, agreement by the parties is not a sufficient basis upon which to order documents filed in a public court record sealed. *See Union Oil Co. of California v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000) ("[T]he parties' confidentiality agreement can not require a court to hide a whole case from view ...."); *see also Hicklin Engineering, L.C. v. Bartell*, 439 F.3d 346 (7th Cir. 2006)("What happens in the federal courts is presumptively open to public scrutiny."). In order to maintain material filed with the court in a case under seal, the court must make a finding of good cause. Fed. R. Civ. P. 26(c).

The local rules of the district require that when any party files with the court such material under seal, the party must include with the filing "either: (1) a motion to seal the material pursuant to this rule; or (2) an objection to the designation of the material as confidential and a statement that the objection to the designation has been provided to the person claiming confidentiality." General L. R. 79(d)(7). If such an objection is made, the person having designated the material as confidential may file a motion to seal under this rule within 21 days of the objection. *Id.* Any such motion "must be accompanied by proof of good cause for withholding the material from the public record." General L. R. 79(d)(4). This procedure was not followed in this case. As a result, there has been no showing of good cause to support the continued maintenance of filings under seal. Based on the authority cited above, Schmidt requests that the entire record be unsealed.

Rather than unseal the entire record, the court will allow any party who wishes to maintain previous court filings under seal to show cause within the following forty-five days why such material should remain under seal. Any filings as to which such a showing is not made will be unsealed. Schmidt is to be given access to those materials not maintained under seal, regardless of

whether he consents to be bound by the protective order previously entered in the case. If he agrees to be bound by the protective order, he may have access to the entire court record.

In conclusion and for the reasons stated herein, Schmidt's motion will be **GRANTED** in part and **DENIED** in part. Schmidt's motion to vacate the protective order is denied. His motion to compel his former attorneys to produce a copy of the complete file in his case is granted, subject to the following limitations: (1) counsel need not provide Schmidt copies of personal information provided by or relating to their other 56 clients that is not relevant to his case; (2) counsel may also withhold material subject to provisions of the protective order the court entered on the stipulation of the parties, assuming Schmidt agrees to be bound by it; (3) Schmidt must pay counsel for the reasonable costs of producing the file, including the costs of conducting any review necessary to avoid the release of material counsel is required to withhold. Finally, Schmidt's request that all court filings that were made under seal be unsealed will be granted unless within 45 days of this order any party seeking to retain such filing under seal shows good cause why Schmidt and members of the public should be denied access to it.

**SO ORDERED** this 13th day of March, 2013.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Judge